UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BEATRICE FRANK,<br><br>        Plaintiff,<br><br>v.<br><br>NAPLES COMMUNITY HOSPITAL, INC.<br><br>        Defendant. | Case No.<br><br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff BEATRICE FRANK, by and through her attorneys, BOATMAN RICCI, P.A., as and for her Complaint herein, alleges as follows:

## INTRODUCTION

1. Beatrice Frank, the Plaintiff herein, was a fitness instructor at Naples Community Hospital. She takes care of her health because it is her sincere and deeply held conviction pursuant to biblical teaching that the human body is the temple of the Holy Spirit, and it to be cared for accordingly. For this reason, and because the Bible also teaches that God has not given Christians a spirit of fear, that Ms. Frank was not overly concerned with the COVID-19 virus. She knew that she was in optimal health and her God-given immune system could defeat any virus that may enter her system. Ms. Frank's sincerely held religious beliefs also dictate against the wearing of face coverings, and injection or insertion of unnatural substances into the body. It is for this reason that Ms. Frank has declined to receive the flu shot and maintained a standing religious objection, approved by Defendant in acknowledgment of her sincerely held religious beliefs against vaccination. When Defendant imposed a series of COVID mandates upon its employees, Ms. Frank sought religious accommodation. Ms. Frank was immediately placed on unpaid administrative leave. Then, without evaluating and expressly granting or denying Ms. Frank's

request, Defendant summarily terminated Plaintiff's employment. Defendant's termination of Plaintiff's employment violated Title VII of the Civil Rights Act of 1964, Florida Statutes Chapter 760 and all other applicable provisions of law, as described hereinbelow.

## PARTIES

2. Plaintiff, BEATRICE FRANK (hereinafter referred to as "Ms. Frank" or "Plaintiff") is a former employee of Defendant, NAPLES COMMUNITY HOSPITAL, INC. and a devout Christian. Ms. Frank was a resident of Collier County, Florida at all relevant times herein and continues to be a resident of the State of Florida.

3. Defendant, NAPLES COMMUNITY HOSPITAL, INC. (hereinafter referred to as "Defendant" or "NCH") is a corporation duly formed and existing pursuant to the laws of the State of Florida. Defendant is located in Collier County, Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States including 42 U.S.C. §2000-e, *et seq.*.

5. This Court has jurisdiction over Plaintiff's pendant state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 based on the location of Defendant and the location in which the events giving rise to the suit took place.

## ALLEGATIONS OF FACT

7. Ms. Frank began her employment with NCH in 2007 as a group fitness instructor.

8. In 2018, after earning additional certifications, Ms. Frank also did personal training at and on behalf of NCH.

9. In 2021, with the emergence of the COVID-19/SARS-CoV-2 virus, NCH closed its gym for a couple of months, causing Ms. Frank to lose income.

10. When the gym reopened, Defendant required Ms. Frank and other instructors to wear masks when walking through the gym to the room where classes were held and the location where the personal training was to occur. Ms. Frank and others were permitted to remove their masks while teaching and working out.

11. Perhaps due to widespread complaints and noncompliance, that initial masking requirement in the gym was quickly dropped by NCH.

12. However, the face covering requirement was reinstated in July 2021.

13. Ms. Frank learned that it had been reinstated because she observed some NCH staff members distributing masks in the gym while she was teaching a class on Friday afternoon. When she questioned the employees as to why they were handing out masks, they informed her that NCH had reinstated its face covering requirement.

14. On Saturday morning (the next day), Ms. Frank went to the gym to take a class. As she walked by the front desk, she was stopped and handed a paper mask.

15. Ms. Frank told the staff member that she would not wear the mask, and then proceeded upstairs to take the class.

16. Heather Imsdahl, the Director of Group Fitness for NCH, called Ms. Frank upon her return home from the gym. Ms. Imsdahl inquired of Ms. Frank why she refused the mask that was handed to her at the gym that morning. Ms. Frank explained that she has a religious objection to wearing a face covering.

17. Ms. Imsdahl informed Ms. Frank that because she would not comply with the face covering requirement, she was being placed on unpaid administrative leave immediately and was

suspended from teaching classes and personal training until further notice. Ms. Imsdahl further told Ms. Frank that Human Resources would be reaching out to her.

18. Ms. Frank reiterated to Ms. Imsdahl that she could not be compelled to wear a mask because doing so conflicted with her sincerely held religious beliefs. Ms. Imsdahl advised that a formal request for religious exemption had to be submitted to NCH. Ms. Frank advised of her intention to do so.

19. Ms. Frank's unpaid administrative leave began on July 31, 2021.

20. The following Monday, a representative from Defendant's Human Resources Department contacted Ms. Frank and asked her to come in for a meeting.

21. Ms. Frank obliged. However, because Ms. Frank was unwilling to wear a face covering, the meeting was held outside.

22. The attendees at the meeting besides Ms. Frank included Heather Imsdahl, Jennifer Ray (Ms. Frank's immediate supervisor) and Zachary Tyler (Human Resources employee). Ms. Ray and Mr. Tyler told Ms. Frank that she has never had a bad review in her fourteen years of employment with Defendant and that she was beloved by all, and urged her to comply so that they would not be put in the position of having to terminate her employment.

23. In response, Ms. Frank explained to Ms. Ray and Mr. Tyler that she had a sincere, faith-based objection to wearing a face covering and was seeking a religious accommodation.

24. Mr. Tyler instructed Ms. Frank that a request for religious exemption/accommodation had to be submitted on specific forms, which he then handed to Ms. Frank.

25. Ms. Frank noted that she had a standing approved religious exemption to Defendant's flu shot requirement.

26. On August 5, 2021, just a few short days later, Ms. Frank submitted to Defendant the completed packet of forms she was given by Mr. Tyler. In it, she requested exemption from Defendant's masking, vaccination, and testing[1] requirements on the grounds that all of those violate her sincerely held religious beliefs. She explained those beliefs and the conflict in detail in the exemption request.

27. Shortly thereafter, Ms. Frank received a telephone call from Mr. Tyler with Ms. Ray present. Mr. Tyler threatened Ms. Frank, telling her that it would be considered job abandonment if she did not return to work. Ms. Frank told him that she is ready and willing to return to work so long as she is not made to violate her sincerely held religious beliefs.

28. Two other NCH Human Resources employees, Jennifer Hart and Todd Lyon, separately called Ms. Frank. Both told her that NCH would not consider or grant any religious accommodations to its face covering policy, and that she would be terminated for job abandonment if she did not put on the mask and come to work.

29. Ms. Frank told these NCH operatives, too, that she was well within her rights to seek religious accommodation and she was not abandoning her job. Ms. Frank made it clear that she wished to return to work, and stood ready, willing, and able to do so if she were exempted from the face covering requirement.

30. On August 18, 2021, Ms. Frank received a certified letter in the mail from Defendant (signed by Mr. Tyler), which implied that her employment was being terminated in that it stated it included information for employees that have separated from employment with NCH. Ms. Frank's request for religious accommodation was not specifically addressed therein.

---

[1] Defendant had informed its employees that all employees needed to be vaccinated by September 1, 2021, and any unvaccinated employees would be required to undergo regular PCR testing until such time as they were fully vaccinated or, presumably, terminated.

31. By certified letter dated August 20, 2021, Ms. Frank responded to Defendant by clarifying that she had not separated from NCH, that her request for religious exemption is still under review to her knowledge, and that she is awaiting her reasonable accommodation as required by law.

32. On August 26th and 27th, Ms. Frank received telephone calls from Ms. Hart and Mr. Tyler once again advising that her request for religious exemption would not be considered.

33. On August 27, 2021, Ms. Frank sent an email to Renee Thigpen – the head of NCH's Human Resources Department – advising that she remained ready to return to work, was awaiting a formal response to her request for religious accommodation, and proposing some possible accommodations such as temperature checks and social distancing.

34. Ms. Thigpen responded to Ms. Frank via email advising that the exemption requests were not being reviewed until August 31st at the earliest, but stating that nevertheless Ms. Frank's employment had been terminated due to her refusal to comply with NCH's face covering requirement.

35. Thereafter, Ms. Frank filed a Complaint of Discrimination with the Florida Commission on Human Relations. The Commission rendered a determination of No Reasonable Cause.

36. Thereafter, Ms. Frank sought review by the United States Equal Employment Opportunity Commission ("EEOC").

37. The EEOC issued Ms. Frank a Right-to-Sue letter dated August 2, 2022.

38. In November 2021, Governor Desantis signed into law Section 381.00317, Florida Statutes, a law prohibiting private employers from enacting COVID-19 mandates for their

employees without providing certain enumerated exemptions. The statute provides (in pertinent part):

> A private employer may not impose a COVID-19 vaccination mandate for any full-time, part-time, or contract employee without providing individual exemptions that allow an employee to opt out of such requirement on the basis of medical reasons, including, but not limited to, pregnancy or anticipated pregnancy; religious reasons; COVID-19 immunity; periodic testing; and the use of employer-provided personal protective equipment…

39. This statute served to clarify and bolster the protections already afforded by the Americans with Disabilities Act, Title VII, and the Florida Civil Rights Act.

40. Upon the enactment of this statute, Defendant should have reinstated Ms. Frank's employment since it was undeniable at that point that it was required to grant Ms. Frank her requested exemption. However, Defendant continues to flout the law.

41. As a result of Defendant's unlawful termination of Ms. Frank, Ms. Frank has lost substantial income. The income lost for her part-time group fitness instruction is approximately Fifteen Thousand Dollars ($15,000) per year. Her annual income from personal training (at a rate of compensation of $85-$100 per hour) but could have been as much as $208,000 annually. This income would have continued for many years, potentially for the rest of Ms. Frank's life.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §§2000e-2
FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION
(Failure to Accommodate)

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 above as though fully set forth herein.

43. The ignoring and *de facto* denial of Plaintiff's request for religious accommodation and subsequent termination were unlawful acts of discrimination and retaliation in violation of the applicable provisions of Title VII of the Civil Rights Act of 1964.

AS AND FOR A SECOND CAUSE OF ACTION
FLORIDA CIVIL RIGHTS ACT OF 1992 (§760.01, Fla. Stat.)

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 and 43 above as though fully set forth herein.

45. In addition to violating the federal statute enumerated above, the Defendant's actions alleged herein violate the Florida Civil Rights Act insofar as Defendant discriminated against Plaintiff on the basis of her religion.

WHEREFORE, Plaintiff respectfully requests that the Court grant her relief as follows:

(i) Issue an Order directing Defendant to reinstate Plaintiff to her prior position of employment; and,

(ii) Retroactively award Plaintiff all salary, other compensation, and benefits appurtenant to her position of employment; and,

(iii) If employment is not reinstated, award Plaintiff additional compensatory damages ("front pay") in the amount of Five Million Dollars; and,

(iv) Award punitive damages to Plaintiff in the amount of Five Million Dollars; and,

(v) Award Plaintiff counsel fees and costs associated with this action; and,

(vi) Such other and further relief as this Court may deem just and proper.

Dated: October 31, 2022

BOATMAN RICCI

_s/_ James A. Boatman, Jr._____
    James A. Boatman, Jr., Esq.
    Fla. Bar No. 130184
    3021 Airport-Pulling Rd. N., Suite 202
    Naples, Florida 34105
    Email: CourtFilings@boatmanricci.com
    (239) 330-1494 – Telephone
    Attorneys for Plaintiff